IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PEYTON SISSON                                                          PLAINTIFF
ADC #172211

v.                                No: 3:25-cv-00020-DPM-PSH

MEGAN LOCKHART                                                        DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Peyton Sisson, an inmate at the Grimes Unit of the Arkansas Division of Correction, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on February 24, 2025 (Doc. No. 2).  The Court screened Sisson's amended complaint (Doc. No. 4), and concluded that he may proceed with his claims against defendant Megan Lockhart.  *See* Doc. No. 5.  His claims against defendants Aundrea Culclager, Ashley

Jackson, and Crystal Reed were dismissed for failure to state a claim upon which relief may be granted. *See* Doc. No. 21.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by Lockhart (Doc. Nos. 16-18). Lockhart seeks judgment as a matter of law on grounds that Sisson did not exhaust his administrative remedies as to his claims against her before he filed this action. Sisson filed a response to Lockhart's motion (Doc. No. 19), and Lockhart filed a reply (Doc. No. 20). For the reasons described herein, the undersigned recommends that Lockhart's motion for summary judgment be GRANTED.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in

his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Analysis

Lockhart argues that Sisson's claims against her should be dismissed because he failed to exhaust his administrative remedies before he filed this lawsuit. In support of her motion, Lockhart submitted a declaration by Brandy Johnson, the ADC's Medical Grievance Coordinator (Doc. No. 18-1 at 1-2); a copy of grievance

GR-24-1347 (*id.* at 3-5); and a copy of the ADC's grievance procedure, Administrative Directive 19-34 (Doc. No. 18-2).  Sisson did not submit any additional grievances with his response.  *See* Doc. No. 19.

## A.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.  It merely requires compliance with prison grievance procedures to properly exhaust.  *See id*.  Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy.  *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure.  *See* Doc. No. 18-2 at 5.  To resolve a problem, an inmate must first seek

informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 1-2, 7. Inmates are to "specifically name each individual involved" so that the ADC may complete a proper investigation and response. *Id*. at 5. The policy provides that only one grievance form

> can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed. Additional problems/issues contained in the grievance will not be considered as exhausted.

*Id*. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 7.

A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id.* at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id.* at 8. If a formal grievance is medical in nature, it is forwarded to the appropriate medical personnel for response. *Id.* at 10.

The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at

10-11.  If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director for Health and Correctional Programs.  *Id.* at 12.  An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II).  *Id.* at 12.  The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal.  *Id.*  If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected.  *Id.*  The grievance procedure further provides that in order to complete an appeal, "the inmate must state a reason for the appeal, and must date, sign, and write the inmate's ADC number on the attachment being appealed."  *Id.*

Once the Deputy Director responds or the appeal is rejected, the grievance process is complete.  *Id.* at 13.  According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances.  *Id.* at 14.  The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit.  *Id.* at 19.

**B.    Sisson's Complaint Allegations & Relevant Grievance**

Sisson alleges that he became ill on November 22, 2024, and was treated rudely by Lockhart who examined him and sent him back to his barracks without treatment.  Doc. No. 4 at 4.  He alleges that Lockhart told Crystal Reed about his symptoms when she arrived at work the next day.  *Id.* He claims that Reed examined him and found him to be much worse than the night before.  *Id.*  He indicates that Reed instructed him to write a grievance and he did so.  *Id.*

According to medical grievance coordinator Johnson's declaration, Sisson submitted one medical grievance pertaining to his treatment by Lockhart:  GR-24-1347.  Doc. No. 18-1 at ¶4.  Sisson initiated this grievance on November 23, 2024. *Id.* at p. 5.  He complained that Lockhart was rude to him on November 22, 2024, concluded there was nothing wrong with him, and sent him back to his barracks.  *Id.* Sisson proceeded to Step Two and received a response, finding his grievance without merit.  *Id.* at 4.  He appealed, but the appeal was rejected as incomplete because he "did not complete Attachment III or IV by signing [his] name, ADC#, and/or the date."  *Id.* at 4-5.  Sisson acknowledges that he did not date his appeal or add his ADC number, and claims that he was not directed to do so by Health Services.  Doc. No. 19 at ¶ 10.

Sisson failed to correctly follow all steps of the grievance procedure when he grieved the medical treatment he received from Lockhart.  The ADC's grievance

procedure requires that an inmate date and sign his appeal and include his ADC number.  Sisson did not date his appeal or include his ADC number.  The appeal was therefore appropriately rejected.  Proper exhaustion "'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Sisson's claims against Lockhart should therefore be dismissed without prejudice due to Sisson's failure to exhaust available administrative remedies.

## IV.  Conclusion

For the reasons stated herein, the Court recommends that Lockhart's motion for summary judgment (Doc. No. 16) be granted, and Sisson's claims against her be dismissed without prejudice due to Sisson's failure to exhaust available administrative remedies.

SO RECOMMENDED this 6th day of October, 2025.

_____
UNITED STATES MAGISTRATE JUDGE